IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **SWART,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| and **ELIZABETH NORDEN, TYLER** | ) | Case No. 19-cv-06213 |
| **BRUMFIELD, DORIS DAVENPORT,** | ) | |
| and **WILLIAM MORGAN,** | ) | Hon. John Robert Blakey |
| | ) | Magistrate Judge Sidney I. Shenkier |
| Plaintiffs-Intervenors, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION OF PLAINTIFFS-INTERVENORS FOR PRELIMINARY INJUNCTION**

Plaintiffs-Intervenors Elizabeth Norden, Tyler Brumfield, Doris Davenport, and William Morgan ("Intervenors") hereby move for a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. As discussed more fully below, the City of Chicago should be enjoined from arbitrarily enforcing its rules regarding impermissible activity in Millennium Park to harass, intimidate, and interfere with Intervenors and other individuals exercising their constitutional right to collect petition signatures on referendums of public interest.

Intervenors hereby join in the motion for preliminary injunction and other relief filed by Plaintiffs in this Court previously, and they incorporate and adopt the arguments made by Plaintiffs in their supporting memorandum. This memorandum by Intervenors supplements the memorandum filed by Plaintiffs.

**STATEMENT OF FACTS**

Intervenors are all individuals who circulated petitions for Take Charge Chicago, a ballot initiative committee that was seeking to place a referendum adopting mayoral term limits and creating a consumer advocate on the ballot in Chicago. *See* Declaration of Elizabeth Norden, ¶2 (Exh. 1); Declaration of William Morgan, ¶2 (Exh. 2); Declaration of Doris Davenport, ¶2 (Exh. 3); Declaration of Tyler Brumfield, ¶2 (Exh. 4). The Take Charge Chicago referendum was a binding referendum authorized by Sections 6(f) and 11 of Article VII of the Illinois Constitution. Morgan Decl., ¶2.

On numerous occasions, City of Chicago employees, agents or representatives interfered with the ability of Intervenors to circulate petitions in Millennium Park in the City of Chicago. *See*, *e.g.*, Norden Decl., ¶¶3-8; Morgan Decl., ¶2; Davenport Decl. ¶¶6-8; Brumfield Decl. ¶3. Intervenors often felt harassed while they circulated petitions, and the actions of the City of Chicago employees or representatives also had a chilling effect on their ability to circulate petitions freely and the willingness of individuals to sign the petitions. *See*, *e.g.*, Norden Decl., ¶6; Morgan Decl., ¶10; Davenport Decl. ¶8.

The actions of City of Chicago employees or representatives include:

- telling one of the Intervenors that he could not circulate petitions because "This is how it works in Chicago," "This is government property," and "This is a public park" (Morgan Decl., ¶6);

- following an Intervenor while he circulated petitions in an apparent attempt to intimidate the petition circulator and potential petition signers (*id.*, ¶¶8-10);

- telling an Intervenor that he could not circulate petitions on sidewalks in and around Millennium Park (*id.*, ¶12);

- telling an Intervenor that he had to leave an area near the Great Lawn in Millennium Park (*id.*, ¶15);

- videotaping an Intervenor while she was circulating petitions and telling her that the video would be provided to the "appropriate officials" in an attempt to intimidate her (Norden Decl., ¶8);

- harassing an Intervenor and calling her a "horrible person" and other names (*id.*, ¶4);

- the head of security at Millennium Park telling an Intervenor that she could not circulate petitions, citing the rules of the Park (*id.*, ¶7); and

- interfering with an Intervenor's ability to circulate petitions such that she collected many fewer signatures than she would have been able to otherwise (Davenport Decl., ¶¶3-8);

- telling an Intervenor that he could not enter a large area of the Park because he was carrying petitions (Brumfield Decl, ¶3).

Intervenors are civic activists, and they intend to continue circulating referendum petitions at Millennium Park, including active referendums for Mayoral and Aldermanic term limits in the City of Chicago. *See*, *e.g.*, Norden Decl., ¶10; Morgan Decl., ¶17; Brumfield Decl. ¶5.

Millennium Park is an important location for Intervenors and other petition circulators to circulate petitions because it is the busiest public space in Chicago. Millennium Park's own promotional materials refer to it as "Chicago's town square." *See* Exh. 5. The City describes Millennium Park as the "#1 attraction in the Midwest" and "among the Top 10 most-visited sites in the U.S." *Id.* Millennium Park has hosted large civic events in the past, including the Mayoral inauguration of Rahm Emanuel in 2011, a mass civil union ceremony presided over by Governor Pat Quinn in 2011, and a speech by the President of Poland in 2018. *See* Exhs. 6-8.

One recent public document lists the following facts about Millennium Park:

- Prior to the "1809 dedication of 20 acres of the Fort (Dearborn) as a park," citizens lobbied to have the site declared "Public Ground- A Common to Remain Forever

3

Open, Clear, and Free of Any Building" (Exh. 9, p. 90);

- A chronology shows that the initial intention was for a public park with art work or artistic displays only added later (*id.*, pp. 90-91);

- The site is referred to as "front yard of Chicago" and there was an "official designation" of the site as "parkland" in 1844 (*id.*, p. 95-96);

- The park site is referred to as "public green space" (*id.*, p. 96);

- The park is referred to as a: "High quality front yard for all Chicagoans" (*id.*, p. 97);

- "additions of art, landscape design and architecture . . . were not anticipated in the original plan" (*id.*, p. 98);

- The site is referred to as a "Front yard" and "green and public" (*id.*, p. 100);

- "many people interviewed during the site visit indicated that the plan for the Park did not really anticipate the mix of art installation" (*id.*, p. 109); and

- The site is referred to as "new public open space" (*id.*, p. 121).

## ARGUMENT

The Court should issue a preliminary injunction where the moving party demonstrates: (1) a likelihood of success on the merits, (2) the potential for irreparable harm if the injunction is not issued, (3) that the balance of relative harm weighs in the moving party's favor, and (4) that the preliminary injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). As discussed more fully below, Intervenors' request for a preliminary injunction satisfies all of these elements and should be granted.

### I.     INTERVENORS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

Plaintiffs' motion for preliminary injunction argues that they are likely to succeed on the merits of their First Amendment claims, which are substantially similar to Intervenors' First Amendment claims. Specifically, Plaintiffs argue they will succeed because Millennium Park is a

4

traditional public forum and the rules governing activity in Millennium Park are vague and overbroad such that they have been and can be used to infringe upon First Amendment rights (which include free speech and the freedom to petition).

Intervenors set forth below in Section A additional reasons for the Court to find Millennium Park a traditional public forum subject only to narrowly tailored regulation, and they argue in Section B that Millennium Park's rules are subject to strict scrutiny because Intervenors have a right under the Illinois Constitution to freely circulate binding referendum petitions.

### A. MILLENNIUM PARK IS A TRADITIONAL PUBLIC FORUM WHERE INTERVENORS SHOULD BE PERMITTED TO CIRCULATE PETITIONS.

As set forth in Plaintiffs' motion for preliminary injunction, Millennium Park is a traditional public forum under longstanding First Amendment precedent. As a general matter, parks are "quintessential" public forums. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Moreover, a public forum is defined by "objective characteristics" regardless of the "government's intent." *See Arkansas Educ. TV Comm'n v. Forbes*, 523 U.S. 666, 678 (1998). The facts set forth above – Millennium Park's longstanding use as a public park, the large number of visitors it attracts, and the secondary nature of the artwork in both timing and emphasis – demonstrate objectively that Millennium Park is a traditional public forum.

There is a long line of precedent supporting the conclusion that the characteristics of Millennium Park render it a traditional public forum. *See Heffron v. International Soc. For Krishna Consciousness*, 452 U.S. 640, 651 (1981) (street considered public forum in part because it was a "place where people may enjoy the open air or the company of friends and neighbors in a relaxed environment."); *U.S. v Grace*, 461 U.S. 171, 177 (1983) ("streets, sidewalks, and

5

parks, are considered, **without more**, to be "public forums.") (emphasis added); *Women's Health Link, Inc. v. Fort Wayne Public Trans. Corp.*, 826 F.3d 947, 951 (7th Cir. 2016) ("A traditional public forum is a street, sidewalk, or park, or some other type of public property that like a street, sidewalk, or park has for a very long time ('time out of mind,' as some cases put it, or 'from time immemorial,' as others say) been used for expressive activity, such as marches, picketing, and leafletting"); *Grossbaum v. Indianapolis-Marion Cty. Bldg. Auth.*, 100 F.3d 1287, 1296 (7th Cir. 1996) ("Traditional public fora are properties like streets and parks").

The City of Chicago has not yet articulated the basis on which it believes it can limit Intervenors' First Amendment rights in Millennium Park. However, the City has emphasized that Millennium Park is divided into "rooms", some of which are devoted to artistic displays, and the current Rules regulate speech that has the potential to interfere with artistic displays and limit speech to certain locations. However, these Rules are so vague that that they invite arbitrary enforcement; they are constitutionally overbroad in their limitations; and, they do not justify the City's harassment of Intervenors. The City's actions and Rules violate the First Amendment for multiple reasons.

*First*, Intervenors have been told that they are not allowed to circulate petitions at all in Millennium Park. This is certainly not a narrowly tailored government regulation of First Amendment rights. In addition, Intervenors have been harassed and intimidated by City representatives, making it more difficult for them to collect petition signatures. City representatives have also intimidated potential petition signers. These actions of the City and its representatives are blatantly inconsistent with First Amendment jurisprudence requiring narrowly tailored governmental regulation.

*Second*, the City of Chicago may not convert a public forum into a restricted space simply by redefining it. *See Irish Subcommittee of Rhode Island Heritage Comm'n v. Rhode Island Heritage Comm'n*, 646 F. Supp. 347, 353 (D.R.I. 1986) (government may not change character of public forum by restricting use of a part of it). Objectively, Millennium Park is outdoor space that is open to the public and used for a wide range of public activities. A room is defined as "a portion of space within a building or other structure, separated by walls or partitions from other parts." https://www.dictionary.com/browse/room?s=t. The City's description of various areas of the Park as "rooms" is certainly creative, but legally irrelevant – the Park is an outdoor public space.

*Third*, the City has allowed civic and political activity in the Park, so it cannot discriminate against a certain type of political activity. Events like the Mayoral inauguration, the civil union ceremony, and the speech of the President of Poland are among the political and civic events that have occurred in Millennium Park. Because these various political activities have been allowed, the City may not prohibit or stymie other political activity it deems less favorable.

*Finally*, the Park Rules as currently drafted lack clear standards necessary for an appropriate regulation. The Rules purportedly regulate conduct that interferes with the ability of visitors to enjoy artistic displays, but they are drafted to allow arbitrary interpretation and enforcement. They also completely prohibit First Amendment activity in large areas of the Park that do not contain artistic displays or where artistic displays are intermittent. The Rules essentially act as a prior restraint on political speech and petitioning by presuming that this activity will be disruptive. Such a prior restraint may not be exercised without clear standards.

7

*See*, *e.g.*, *Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 553 (1975) (criticizing exercise of prior restraint denying a permit for a theater production without clear standards). The Rules should be enjoined from enforcement until they are modified to provide constitutional and clear standards as to what activities might be prohibited because they interfere with the artistic displays. For example, the blanket prohibition on collecting petition signatures in Pritzker Pavilion could be replaced with a regulation against collecting petition signatures during a performance.

Because Millennium Park is a traditional public forum and the City, through its actions and Rules, has limited Intervenors' First Amendment rights far beyond narrowly tailored regulation, Intervenors are likely to succeed on the merits of their claim that the City of Chicago is infringing on their First Amendment rights.

### B. THE ILLLINOIS CONSTITUION REQUIRES STRICT SCRUTINY OF MILLENNIUM PARK RULES THAT HAVE BEEN USED TO INHIBIT THE ABILITY OF INTERVERNORS TO CIRCULATE REFERENDUM PETITIONS.

The petitions circulated by Intervenors and the petitions Intervenors intend to circulate in the immediate future are for referendums authorized by Section 6(f) and 11 of Article VII of the Illinois Constitution. Illinois law provides that government restrictions on the right of referendum under the Illinois Constitution should be subject to strict scrutiny. In *Coalition for Political Honesty II*, the Illinois Supreme Court ruled that legislative restrictions on initiatives authorized by the Illinois Constitution are subject to strict scrutiny. *See Coalition for Political Honesty v. State Bd. of Elections*, 415 N.E.2d 368 (Ill. 1980) ("*Coalition for Political Honesty II*") *see also Coalition for Political Honesty v. State Bd. of Elections*, 1982 U.S. Dist. LEXIS 12411, *14-15 (N.D. Ill. April 23, 1982).

The Court wrote: "The 'strict scrutiny' to which the Supreme Court has subjected legislative restrictions upon the right to vote (Bullock) is, in our judgment, apposite here. While the General Assembly is authorized to establish the 'procedure for determining the validity and sufficiency of a petition' (Ill.Const.1970, art. XIV, sec. 3), that procedure cannot unnecessarily restrict the initiative privilege." *Id.* Accordingly, the Court struck down a restriction on elector-initiated referendums that invalidated a full petition sheet of signatures if a single petition signature on the sheet was invalid. The Court reasoned that "the disqualification of entire sheets is simply too harsh. It is not the 'least drastic means' of insuring the integrity of the initiative process." *Id.* at 378.

The Court noted that Article XIV was:

> drafted and adopted as a check on the legislature's self-interest, and the necessity to protect the rights conferred thereby from debilitating legislation is implicit in the convention's action. We believe it is clear from the convention proceedings that the quoted constitutional provisions are to be construed so as to effectuate the basic purpose of article XIV, section 3, to provide a workable initiative scheme unfettered by restraints which unnecessarily inhibit the rights which article XIV confers. (415 N.E. 2d at 375.)

The Illinois Supreme Court's analysis is particularly relevant here where the Mayoral administration of the City of Chicago is engaging in activity that inhibits Intervenors from circulating petitions to place a term limit on the Mayor. This is precisely the type of self-interested government interference that *Coalition for Political Honesty II* warns against. For the reasons set forth above and in Plaintiff's motion, the rules as drafted are vague and overbroad such that they do not survive strict scrutiny. As such, the City should be enjoined from arbitrary enforcement that infringes on Intervenors' Illinois constitutional rights of petition and referendum.

II.     **THE REMAINING ELEMENTS FOR A PRELIMINARY INJUNCTION ARE SATISFIED.**

In addition to likelihood of success on the merits, there are a number of prudential considerations for granting a preliminary injunction, which are satisfied here.

*First*, infringement on constitutional rights is *per se* an irreparable harm. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Murphy v. Zoning Comm'n of the Vill. of New Milford*, 148 F. Supp. 2d 173, 180-81 (D. Conn. 2001). In addition, Intervenors seek to circulate petitions to get referendums on the ballot as soon as March of next year (which would need to be submitted by December 2019).

*Second*, there is no more than nominal harm to the City if it is required to either allow petition activity or to draft more specific rules consistent with constitutional limitations. Any potential harm in this regard is substantially outweighed by the actual harm to Intervenors, who have been bullied, harassed, and intimidated and to the political process with which the City of Chicago has interfered.

*Third*, civic engagement is clearly in the public interest, and the Millennium Park Rules can be drafted to provide more certainty and, to the extent necessary, narrow limitations to protect the public's enjoyment of art (such as disallowing circulation of petitions in the movie area only while a movie is being shown). Thus, the public interest supports entry of a preliminary injection here.

Accordingly, Intervenors (and Plaintiffs) have established all of the necessary requirements for the Court to issue the requested preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Court should grant Intervenors' motion for a preliminary injunction and enjoin the City of Chicago from arbitrarily applying its Rules for Millennium Park to interfere with Intervenors' rights under the U.S. and Illinois Constitution to circulate referendum petitions in the Park.

Dated: October 21, 2019						INTERVENORS

											By:	/s/ Ed Mullen
													One of Their Attorneys

Pat Quinn (Atty. No. 3127623)					Ed Mullen (Atty. No. 6286924)
216 N. Jefferson St.							Mullen Law Firm
Suite 200										601 S. California Ave.
Chicago, IL 60661								Chicago, IL 60612
(312) 485-1852									(312) 508-9433
ltg.patquinn@gmail.com							ed_mullen@mac.com

*Attorneys for Plaintiffs-Intervenors*